UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-24454-HUCK/MCALILEY

CHRISTINE EGOVILLE,

    Plaintiff,
vs.

ANDREW SAUL, COMMISSIONER
of SOCIAL SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Pending before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 23), and Defendant's Motion for Summary Judgment. (ECF No. 26). This matter is fully briefed and the Honorable Paul C. Huck referred it to me for a report and recommendation. (ECF No. 2, 28). For the reasons set forth below, I respectfully recommend that the Court grant Plaintiff's Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

    **I.**    **Overview**

Plaintiff applied for disability insurance benefits and supplemental security income on September 6, 2016, which is also the alleged onset date of disability. (ECF No. 23 at 1); Tr. 10, 161.[1] Plaintiff's application was denied initially, and on reconsideration. Tr. 234, 251. Pursuant to Plaintiff's request, an Administrative Law Judge ("ALJ") conducted

---

[1] Citations to the transcript of proceedings before the Social Security Administration, which was filed at ECF No. 13, are in the form "Tr. # ."

1

a hearing on September 17, 2018. Tr. 155-220. Plaintiff, who was represented by counsel, testified at the hearing, as did Plaintiff's partner and an impartial vocational expert. *Id*. On December 21, 2018, the ALJ issued a written decision in which she found that Plaintiff was not under a disability as defined in the Social Security Act. Tr. 10-25. The Appeals Council denied Plaintiff's request for review of the ALJ'S decision, Tr. 1-5, making the ALJ's decision the final decision of the Commissioner.

Plaintiff now asks this Court to reverse the Commissioner's decision and remand the matter to the ALJ for a new hearing. (ECF No. 23 at 13, 20). Plaintiff argues that remand is warranted for two reasons: the ALJ (1) did not articulate her reasons for assigning little weight to the medical opinion of Plaintiff's treating psychiatrist, and (2) failed to resolve an apparent conflict between the Dictionary of Occupational Titles ("DOT") and the vocational expert's testimony. (ECF No. 23). With respect to the latter argument, Plaintiff contends that an apparent conflict exists between the reasoning level set forth in the DOT for the jobs that the vocational expert testified Plaintiff could perform, and the ALJ's limitation of Plaintiff to simple, routine and repetitive tasks.

The Commissioner responds that the Court should affirm the ALJ's decision because: (1) the ALJ adequately explained her reasons for finding good cause to assign little weight to the medical opinion of Plaintiff's treating psychiatrist, and (2) a limitation to simple, routine and repetitive tasks is not inconsistent with the reasoning level the DOT assigned to the relevant jobs. (ECF No. 26).

2

## II.     Proceedings Before the Commission

The Court has thoroughly reviewed the entire record in this action, which includes Plaintiff's medical records and the transcript of the hearing before the ALJ. I reference the administrative record here as it is relevant to the issues I address.

At the time of the ALJ's decision, Plaintiff was 48 years old and had no past relevant work. [2] Tr. 15, 19. Plaintiff testified that she stopped attending school in the 12th grade and did not graduate high school or obtain her GED. Tr. 165. According to Plaintiff, she is unable to work because of her "mental status and the medications that [she is] on." Tr. 173. In seeming contradiction, Plaintiff also testified that her medication makes her nauseous "just for a little while until everything settles down," Tr. 178, and when her physician lowers the dosage, the medication helps her without any adverse side effects. Tr. 179. Plaintiff's daily activities include helping her 11-year-old son get ready for school, assisting him with homework, preparing meals for the family, cleaning the house, doing laundry and feeding and walking her dog. Tr. 180, 225, 399.

Plaintiff was involuntarily committed for psychiatric treatment in both January and August, 2016. In the first instance, Plaintiff "had been off medications, which exacerbated her psychotic symptoms." Tr. 478, 487. Clinical notes reflect that "[a]t their worst, [Plaintiff's] symptoms were moderate" and "markedly improved after treatment." Tr. 480, 482. Plaintiff was discharged from the hospital after three days. Tr. 478. In the second instance, Plaintiff was admitted to the hospital for knee pain and, during the course of her

---

[2] Plaintiff turned 49 years old a few days after the ALJ's decision. (ECF No. 23 at 1). Plaintiff worked as a waitress until 2004. Tr. 19.

hospitalization, developed acute psychosis. Tr. 504. Plaintiff's condition improved with treatment and she was discharged after one week. Tr. 504, 509.

Plaintiff's treating psychiatrist, Dr. Manuela Georgescu, completed a Medical Source Statement in May 2017 where she stated that Plaintiff suffered from poor concentration, unpredictable behavior and poor reality testing. Tr. 571. Dr. Georgescu also opined that, with respect to many "mental abilities and aptitudes needed to do unskilled work," Plaintiff was "unable to meet competitive standards" or had "no useful ability to function." Tr. 572-3. Dr. Georgescu did not provide any medical or clinical findings to support her conclusions, despite being specifically asked to do so. *Id*. Dr. Georgescu further opined that Plaintiff would be absent from work four or more days per month. Tr. 574.

The treatment notes Dr. Georgescu made both before and after she completed the Medical Source Statement consistently reflect that Plaintiff was oriented to time, place and person, her memory, thought process and thought content were intact or unremarkable, and her concentration, insight and judgment were fair. Tr. 86, 88, 90, 92, 94, 96, 98, 567, 568, 580, 585, 588, 592, 594, 596. One month before Dr. Georgescu wrote the Medical Source Statement, Plaintiff reported that she "volunteered for [her] son's school" and was "a little better." Tr. 594-5. Dr. Georgescu's treatment notes consistently reflect that improvements in behavior and activities of daily living "due to psychiatric interventions" were "evident" or "observed." Tr. 87, 89, 91, 93, 95, 97, 99, 566, 569, 595, 597.

In her decision, the ALJ found that Plaintiff has the severe impairments of asthma, depression, anxiety, substance abuse and status post inferior vena cava filter, none of which met or medically equaled the criteria of any impairment identified in the Listing of

Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13. As relevant here, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 416.967(a) with these mental limitations: she (i) is frequently able to respond to changes and demands in a routine work setting, (ii) can occasionally interact with coworkers, supervisors, and the public, (iii) performs best when the work deals primarily with objects rather than people, (iv) is able to complete simple, routine, repetitive tasks, but not at a production rate or pace, and (v) can maintain concentration for at least two hours at a time, but may be off task at least five (5) minutes per hour. Tr. 15.

The ALJ posed a hypothetical to the vocational expert that reflected Plaintiff's age, education and RFC. Tr. 212, 215. The vocational expert testified that this hypothetical individual could work as a tube operator, document preparer or addresser. Tr. 215. The ALJ asked the vocational expert whether her testimony was consistent with the DOT, which the vocational expert confirmed. Tr. 217. The ALJ did not inquire further on the subject. Based on the vocational expert's testimony, and in light of Plaintiff's age, education and RFC, the ALJ concluded that Plaintiff was not disabled because Plaintiff is able to perform jobs that exist in significant numbers in the national economy. Tr. 20.

### III. Analysis

In evaluating a claim for disability benefits, the ALJ must follow the five steps set forth in 20 C.F.R. §§ 416.920(a) and 404.1520:

1. Is the claimant performing substantial gainful activity? If not, the ALJ next determines;

2. Does the claimant have one or more severe impairments? If the claimant does, the ALJ next considers;

      3.    Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, claimant is disabled; if not, the ALJ must determine claimant's RFC; and then determine;

      4.    Based on the RFC, can claimant perform his past relevant work? If so, he is not disabled. If he cannot perform his past relevant work, the ALJ must finally determine;

      5.    Whether, based on his age, education, and work experience, and the RFC, can claimant perform other work of the sort found in the national economy. If so, claimant is not disabled. If not, claimant is disabled and entitled to benefits.

*Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

In its review of the ALJ's decision, the Court must consider the record as whole and determine whether the ALJ applied the correct legal standard, and whether her findings of fact are supported by substantial evidence in the record. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240, n. 8 (citation omitted).

The Court must apply a presumption in favor of the ALJ's finding of fact; there is no such presumption, however, in favor of the ALJ's legal conclusions. Thus, the Court must reverse if the ALJ incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine whether the law was properly applied. *Perez v. Comm'r of Soc. Sec.*, No. 6:06-CV-1648-ORL-19KRS, 2008 WL 191036, *5 (M.D. Fla. Jan. 22, 2008). After its review, this Court is authorized to enter a judgment affirming, modifying, or reversing the decision of the ALJ, with or without remand. *Perez*, 2008 WL 191036, *5; 42 U.S.C. §405(g).

### A. The ALJ Did Not Err in Assigning Little Weight to Plaintiff's Treating Psychiatrist

An ALJ is required to give treating physicians' medical opinions "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips*, 357 F.3d at 1240-41 (citation omitted). Good cause is found when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241. If an ALJ does not assign substantial or considerable weight to the opinions of treating physicians, she must articulate specific reasons for doing so, and those reasons must be supported by substantial evidence. *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. Appx. 862, 864 (11th Cir. 2012).

Plaintiff argues that the ALJ did not clearly articulate her reasons for finding good cause to discount Dr. Georgescu's Medical Source Statement. (ECF No. 23 at 4-13). This is how the ALJ explained her decision to give Dr. Georgescu's Medical Source Statement little weight:

> Dr. Georgescu did not adequately describe the underlying reasons for the limitations that [s]he imposed. Dr. Georgescu's opinion is extremely dire and inconsistent with the medical evidence of record showing that the claimant actively engages in numerous daily activities around the home, and that she has been relatively stable when she is compliant with her medications. (Ex. 5E; 4F; 8F). The opinion is also inconsistent with Dr. Georgescu's own treatment notes reflecting that the claimant had improvements in behavior due to psychiatric interventions, improvements in her activities of daily living, her concentration and judgment were fair, her though process and memory were intact, her affect was appropriate, she had no hallucinations, and was oriented to time, place and person. (Ex. 4F, p. 26-27; 6F, p. 8-9, 18-21, 23-24).

Tr. 18. Plaintiff argues that the ALJ erred because (i) her reasons are not supported by substantial evidence, (ii) she did not "cite to specific exhibits or any other medical evidence that contradicted Dr. Georgescu's opinion" and (iii) she did not "point to any evidence that was not bolstered by, or consistent with, Dr. Georgescu's treatment notes and pertinent medical opinions." (ECF No. 23 at 13).

Plaintiff's second and third assertions are contradicted by the portion of the ALJ's decision quoted above. There, the ALJ cited specific exhibits in support of her reasons and identified specific evidence that she found was inconsistent with Dr. Georgescu's opinion. Tr. 18.

As for Plaintiff's first assertion – that the ALJ's reasons are not supported by substantial evidence – I am not persuaded. The ALJ correctly found that, in her Medical Source Statement, Dr. Georgescu did not identify any clinical findings or provide any supporting explanation for the limitations she imposed, even though the Medical Source Statement form explicitly asked her to do so. Specifically, in that Statement Dr. Georgescu opined that Plaintiff fell into two categories that carry the most severe limitations, that is, she was "unable to meet competitive standards" or had "no useful ability to function" with respect to many mental abilities and aptitudes needed to do unskilled work. Tr. 572-3. The Medical Source Statement form instructs the physician to "[e]xplain limitations falling into the three most limited categories[3]…and *include the medical/clinical findings that support this assessment*." Tr. 573. Dr. Georgescu's failure to do so rendered her opinion

---

[3] Those categories are "seriously limited, but not precluded;" "unable to meet competitive standards" and "no useful ability to function."

conclusory, which is a recognized basis for finding good cause to assign it less than substantial or considerable weight. *Phillips*, 357 F.3d at 1241.

In explaining why she gave little weight to the opinion of Plaintiff's treating psychiatrist, the ALJ noted that Dr. Georgescu's opinion is inconsistent with the medical evidence and her own treatment notes. This too is supported by substantial evidence. For example, medical records from Plaintiff's two involuntary psychiatric hospitalizations reflect that her condition improved with treatment, and one of those hospitalizations occurred because Plaintiff "had been off medications, which exacerbated her psychotic symptoms." Tr. 478, 480, 509. Medical records dated just one month before Dr. Georgescu's Medical Source Statement reflect that Plaintiff had volunteered at her son's school and was "a little better." Tr. 594. Dr. Georgescu's treatment notes, both before and after she issued her opinion, reflect that Plaintiff's behavior and activities of daily living improved with psychiatric treatment. Tr. 87, 89, 91, 93, 95, 97, 99, 566, 569, 595, 597. Dr. Georgescu's treatment notes also consistently reflect that Plaintiff's memory, thought process and thought content were intact or unremarkable, and her concentration, insight and judgment were fair. Tr. 86, 88, 90, 92, 94, 96, 98, 567, 568, 580, 585, 588, 592, 594, 596.

After a careful review of the ALJ's decision and the record as a whole, I conclude that the ALJ sufficiently articulated her reasons for finding good cause to discount the opinion of Plaintiff's treating psychiatrist. I also find that those reasons are supported by

substantial evidence.[4] A court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as [s]he articulates a specific justification for it." *Hunter v. Social Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

### B. The ALJ Erred in Failing to Resolve an Apparent Conflict Between the DOT and the Vocational Expert's Testimony

Step five of the ALJ's sequential analysis focuses on whether other jobs exist in the national economy which, given Plaintiff's age, education and the RFC, she can perform despite her impairments. *Phillips*, 357 F.3d at 1237. The ALJ can consider "both jobs data drawn from the DOT as well as from the testimony of the vocational expert ("VE") in making this determination." *Washington v. Commissioner of Social Security,* 906 F.3d 1353, 1360 (11th Cir. 2018).

Here, the ALJ posed a hypothetical to the vocational expert that reflected Plaintiff's age, education and RFC, including a limitation to "simple, routine and repetitive tasks" and asked the VE if work is available in the national economy that that individual would be able to perform. Tr. 212-13, 215. The vocational expert testified that such a person could work as a tube operator, document preparer or addresser. Tr. 215. The ALJ relied upon this testimony of the expert to conclude that Plaintiff is not disabled.

The DOT classifies jobs with a reasoning level that ranges from a low of 1 to a high of 6. *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C, § III, (4th

---

[4] Plaintiff primarily relies on two recent Eleventh Circuit decisions, which she contends are similar to the instant case. (ECF No. 23 at 4-6); *Cain v. Comm'r, Soc. Sec. Admin*., 777 Fed. App'x 408 (11th Cir. 2019); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019). I have carefully reviewed those decisions and conclude that they are distinguishable.

ed., rev. 1991). The jobs of tube operator and addresser are classified as a reasoning level 2, and a document preparer is classified as a reasoning level 3. *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles*, § 239.687-014, 1991 WL 672235 (tube operator); § 209.587-010, 1991 WL 671797 (addresser); 1991 WL 672349, § 249.587-018 (document preparer). A reasoning level of 2 requires an individual to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations."[5] *Id.* at DOT § 239.687-014, 1991 WL 672235; § 209.587-010, 1991 WL 671797.[6]

In her second argument, Plaintiff claims there was an apparent conflict between her limitation to simple tasks, and the VE's testimony that she was able to work as a tube operator and addresser, positions that, according to the DOT, require the worker to carry out detailed but uninvolved instructions. Plaintiff argues that the ALJ failed to meet her obligation to inquire about and resolve that apparent conflict, and as a result, her decision is not supported by substantial evidence. (ECF No. 23 at 13-20).

In *Washington v. Commissioner of Social Security*, the Eleventh Circuit addressed the scope of an ALJ's "duty to investigate and develop an adequate factual record to support a disability determination in cases where expert testimony offered by a Vocational

---

[5] The parties limit their arguments to the tube operator and addresser jobs, that have a reasoning level of 2, and I therefore do not address the document preparer position, which requires a higher reasoning level of 3.

[6] By contrast, a reasoning level of 1 – which is the lowest – requires that an individual be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C, § III, (4th ed., rev. 1991)

11

Expert (VE) is contradicted by…the [DOT]….." 906 F.3d at 1356. The *Washington* Court held that:

> the ALJs within the SSA have *an affirmative duty to identify apparent conflicts* between the testimony of a Vocational Expert and the DOT *and resolve them*. This duty requires more of the ALJ than simply asking the VE whether his testimony is consistent with the DOT. Once the conflict has been identified, the [SSR 00-4p] Ruling requires the ALJ to offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict. The failure to discharge this duty means that the ALJ's decision, when based on the contradicted VE testimony, is not supported by substantial evidence.

*Id*. at 1356 (emphasis supplied).

The Court emphasized that this duty arises from the "inquisitorial rather than adversarial" nature of disability hearings, which creates an "independent, affirmative obligation on the part of the ALJ to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the VE if there is one." *Id.* at 1364.

The *Washington* Court "broadly define[d]" apparent conflict. *Breiding v. Comm. Soc. Security*, Case No. 6:19-CV-689-Orl-MAP, 2020 WL 1910353*4 (M.D. Fla. April 20, 2020). It is "more than just a conflict that is made apparent by the express testimony of the VE. It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony. At a minimum, a conflict is apparent if a *reasonable comparison of the DOT with the VE's testimony suggest that there is a discrepancy*, even if, after further investigation, that turns out not to be the case." *Washington,* 906 F.3d at 1365 (emphasis supplied). The Court further explained that ALJs have "ready access to and a close familiarity with the DOT" and that what is "apparent" to an ALJ is viewed in that context.

*Id.* at 1366. [7]

As mentioned above, the vocational expert here testified that a hypothetical claimant who was limited to simple tasks could perform the reasoning level 2 jobs of tube operator and addresser, Tr. 215, which the DOT specifies require an individual to apply "commonsense understanding to carry out detailed but uninvolved written or oral instructions." *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles*, § 239.687-014, 1991 WL 672235; § 209.587-010, 1991 WL 671797. The Commissioner argues that there is no apparent conflict between the vocational expert's testimony and the DOT because a limitation to simple tasks is not inconsistent with a reasoning level 2 job. (ECF No. 26 at 13-18). District courts within this circuit are split on the issue. *Compare Green v. Saul*, No. 8:19-cv-2021-T-TGW, 2020 WL 5743185 (M.D. Fla. Sept. 25, 2020) (no apparent conflict between a limitation to simple tasks and jobs that require reasoning level 2) (collecting cases), *with Breiding*, 2020 WL 1910353 at *4 ("[C]ourts within this circuit have held there is an apparent conflict when an ALJ's hypothetical question limits a claimant to simple tasks and the VE names jobs with reasoning levels of two or three.") (collecting cases). The Commissioner relies upon two unpublished decisions of the Eleventh Circuit, *Hurtado v. Commissioner of Social Security* and *Valdez v. Commissioner of Social Security*. As explained below, *Hurtado* and *Valdez* do not resolve the issue before this Court, as neither establish a bright-line rule that claimants limited to simple tasks can necessarily perform

---

[7] The Court also wrote: "Put another way, if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it and resolve it in his opinion. We take the word 'apparent' to mean 'seeming real or true, but not necessarily so." *Id*. at 1366.

13

jobs that carry a reasoning level of two.

In *Hurtado*, the claimant argued that "a conflict existed between the VE's testimony and the DOT because the reasoning levels of the jobs identified by the VE were inconsistent with her RFC, which limited her to simple, routine, tasks…." 425 Fed. App'x 793, 795 (11th Cir. 2011). In rejecting this argument, the *Hurtado* court reasoned that the claimant "worked for 17 years as a teacher [and] had a master's degree." *Id*. at 795. The *Hurtado* court also evaluated the medical evidence, which showed that the claimant "had intact and fairly well-organized thought processes," had "average to high average cognitive ability" and "retained adequate mental ability to carry out simple instructions…." *Id*. Based upon that record, the Eleventh Circuit found no apparent conflict between the vocational expert's testimony and the reasoning level 2 jobs of fast food worker and mail clerk. *Id*.

In *Valdez*, the Eleventh Circuit faced whether a claimant limited to simple tasks can perform a job, order clerk, with a reasoning level of three. 808 Fed. App'x 1005 (11th Cir. 2020). The Court did not reach that question because the ALJ found that the claimant could perform two different jobs: lens-block gauger, with a reasoning level of two, and a lens inserter, with a reasoning level of one, something the claimant did not challenge. *Id*. at 1009. The Court offered this simple explanation for its ruling: "Valdez has not argued that these jobs are inconsistent with his residual functional capacity and they are not." *Id*. Given the absence of any analysis and the Court's reliance on the concession of the parties, I do not read *Valdez* to hold that, in all situations, there is no conflict between the ability to perform simple tasks and jobs that require a reasoning level of 2. It is also significant that both *Valdez* and *Hurtado* are unpublished opinions and, thus, without binding authority on

this Court.[8]

For the foregoing reasons, in my view, *Hurtado* and *Valdez* do not conclusively establish that the ability to perform simple tasks is consistent with a reasoning level 2 job. This leaves the Court with the task of reviewing the record to determine whether a conflict should have been apparent to the ALJ. Here, the medical evidence consistently reflects that Plaintiff's concentration, insight and judgment were fair. Tr. 86, 88, 90, 92, 94, 96, 98, 567, 568, 580, 585, 588, 592, 594, 596. The record also includes an opinion of the agency psychologist, who found that Plaintiff "would likely have problems carrying out detailed instructions…." Tr. 231. In light of this evidence, a reasonable comparison of the vocational expert's testimony and the DOT suggests a discrepancy because, on this record, it is not clear that Plaintiff's ability to perform "simple" tasks means that she can carry out "detailed but uninvolved" instructions. The ALJ's failure to identify and resolve this discrepancy, leaves her decision not fully supported by substantial evidence.

To be sure, this discrepancy is not as clear as the apparent conflict in *Washington*: there, the VE testified that an individual capable of "occasional fingering" could perform jobs that the DOT stated required "frequent fingering". 906 F.3d at 1366. The comparison here is not as straightforward, given the use of different terms: a limitation to "simple tasks" but a job requirement to follow "detailed but uninvolved written or oral instructions." Yet a discrepancy is apparent, and the Eleventh Circuit is clear that an ALJ has "an independent, affirmative obligation…to undertake a *meaningful investigatory effort* to

---

[8] Unpublished opinions are not considered binding precedent, but may be considered as persuasive authority. *U.S. v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000) (citing 11th Cir. R. 36-2)).

uncover apparent conflicts, beyond merely asking the VE if there is one." *Id*. at 1364 (quotation marks and citation omitted) (emphasis added). The ALJ here did not do so, as her only inquiry to the vocational expert was: "[h]as your testimony today been consistent with the DOT?" [9] Tr. 217.

In concluding that the ALJ erred, the Court is not expressing an opinion whether an actual conflict exists. There may be no actual conflict at all between the VE's testimony here and the DOT,[10] but it is not possible to determine that on this record. And, as mentioned above, *Washington* instructs that a conflict is apparent "if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, *even if, after further investigation, that turns out not to be the case*." *Washington*, 906 F.3d at 1365 (emphasis supplied).

For the foregoing reasons, I conclude that the ALJ erred by failing to identify, investigate and resolve an apparent conflict between the vocational expert's testimony limiting Plaintiff to simple tasks and the DOT jobs of tube operator and addresser, which require a reasoning level of two.[11]

---

[9] The Court recognizes that the standard announced in *Washington* was published just a month and a half before the ALJ issued her decision, in the midst of the holiday season, and it may not have come to the ALJ's attention when she issued her decision. This, of course, does not allow us to avoid a remand.

[10] For example, Plaintiff assists her 11-year-old son with his homework, although there is no indication whether it involves detailed instructions. Tr. 180, 225.

[11] Plaintiff raises several arguments in her Reply that appear to be new and, thus, untimely. (ECF No. 28). The Court need not address those arguments, and their untimeliness, given its conclusion that remand is warranted.

### III. Conclusion

Based on the foregoing, I respectfully recommend that the Court **GRANT** Plaintiff's Motion for Summary Judgment, (ECF No. 23), **REVERSE** the decision of the Commissioner and **REMAND** to the Commissioner for further development of the record. I **FURTHER RECOMMEND** that the Court **DENY** Defendant's Motion for Summary Judgment (ECF No. 26).

### IV. Objections

**No later than fourteen (14) days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Paul C. Huck, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v.* Johnson, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

RESPECTFULY RECOMMENDED in chambers at Miami, Florida, this 3rd day of February, 2021.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc:  The Honorable Paul C. Huck
     Counsel of record